IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| Criminal Productions, Inc.<br><br>　　　Plaintiff,<br><br>v.<br><br>Darren Brinkley,<br><br>　　　Defendant. | Case No. 2:17-cv-00550<br><br>District Judge Dee Benson |

**DEFENDANT'S MOTION FOR ATTORNEYS' FEES**

Defendant Darren Brinkley ("Brinkley") in accordance with Fed. R. Civ P. 54, LR 54-2(f), 17 U.S.C. § 505 and other authorities described herein, moves this Court for an award of his costs and attorneys' fees as prevailing party in the above-captioned matter.

**INTRODUCTION**

On June 7, 2017, Plaintiff Criminal Productions ("Plaintiff" or "Criminal") filed suit against Defendant Darren Brinkley ("Defendant" or "Brinkley") and 31 additional "Doe" defendants. After receiving Plaintiff's form demand letters, but prior to seeking counsel, Brinkley professed his innocence and rebuffed Plaintiff's repeated attempts to extort a settlement from him for something he did not do. Plaintiff persisted, forcing Defendant to retain counsel and incur significant attorneys' fees and costs. Yet Plaintiff had no intention of litigating its claims. Rather, these filings are shameless efforts to extort inflated settlements from infringers and non-infringers alike. As expected, when Plaintiff realized a Motion to Compel discovery was in draft, Criminal sought voluntary dismissal of both its affirmative claims and Brinkley's counterclaims, which this Court granted, with prejudice, on July 6, 2018. At the time the case was

dismissed, over a year since its filing, Plaintiff had not produced an iota of evidence to support its claims of infringement.

Plaintiff's actions in this and other cases should trouble the courts deeply. Despite Defendant's repeated efforts to settle this matter for nothing more than his attorneys' fees and costs to date, Plaintiff steadfastly refused. (Declaration of Lisa L. Clay, ("Clay Dec.") ¶¶ 4-6, attached hereto as Exhibit 1; Declaration of Gregory M. Hoole, ("Hoole Dec." ¶¶ 8-9, attached hereto as Exhibit 2.) Indeed, Plaintiff has never made an offer that included payment of a single cent of Defendant's significant fees and costs – fees and costs that were only required because Plaintiff filed a baseless suit it had no intention of litigating. (*Id*.) Attorney Clay and other troll defense attorneys have sought discovery in Bittorrent cases that have been met with a voluntary motion to dismiss. (Clay Dec. ¶ 7.) These tactics should at minimum require that Defendant Brinkley be made whole for Plaintiff's filing of litigation it clearly had no intention of pursuing and that may have had no basis in the first instance. This is the very definition of "cut and run" litigation. The District of Nevada recently made the following observation before awarding $48,629.50 to the prevailing defendant in a nearly identical case filed by this same Plaintiff:

> "after forcing [Brinkley] to incur tens of thousands of dollars in attorneys' fees, but before the Court issued any substantive decision, should give the Court great pause: Criminal is behaving in a manner designed to increase a defendant's fees to the point where settlement is the only viable option. This Court must not allow defendants, like [Brinkley] to be faced with the Hobson's Choice: do I pay thousands of dollars to a million-dollar production company for something that I didn't do? Or do I hire an attorney, knowing that I will be dismissed before having the chance to prove my innocence?"

*Criminal Productions, Inc. v. Jenkins, et al.*, Case No. 2:16-cv-02704-JCM-PAL, (D. Nev.) (Dkt. No. 51, Aug. 2, 2017) (Dkt. No. 53-2.)

**PROCEDURAL HISTORY**

Plaintiff Criminal Productions filed 90 virtually identical cases across the U.S. between March of 2016 and July of 2017. The instant case is the only one filed in Utah. The allegations of the Complaint, Motion for ISP Discovery and declaration of Daniel Arheidt in support thereof were always the same: Criminal sought compensation for infringement of film rights it claims to hold[1] where it alleged to have evidence of infringement based on an unknown Doe defendant (or a group of defendants) use of a file-sharing program called BitTorrent. In response to the ISP subpoena, Defendant's name was produced, and Plaintiff sent Brinkley several threatening letters demanding payment for alleged infringement.

When Brinkley was unsuccessful in convincing Plaintiff that he had not infringed, and Plaintiff refused to dismiss its claims, Brinkley retained Attorney Clay and Attorney Hoole, who filed an answer and counterclaim for non-infringement on his behalf after failing to convince Plaintiff to dismiss its claims. (Clay Dec. ¶ 4; Hoole Dec. ¶ 8.) The details of Plaintiff's obfuscation and refusal to engage in discovery are well described in Brinkley's opposition to Plaintiff's Motion to Dismiss Defendant's Counterclaim (Dkt. No. 53, Exhibit 1-7 thereto)

Once Brinkley's lead counsel realized there would be technical components to the litigation to which she was less qualified than other, more computer-savvy BitTorrent litigators, she enlisted the assistance of her colleague David H. Madden, who assisted with discovery and strategy but did not file a pro hac vice before Plaintiff filed its Motion to Dismiss. (Declaration

---

[1] At least one district Court has held that the Plaintiff no longer had rights sufficient to support standing to sue. *See F&D v. Zhang*, No, 3:16-cv-1443-SI, 2018 U.S. Dist. LEXIS 65596 (D. Or. April 18, 2018). Attorney Clay recently took a deposition in another Millennium case where it appears the rights necessary to support the suit were licensed to another entity. (Clay Dec. ¶ 10.) Attorney Clay and other troll defense attorneys suspect it is not unusual for a Plaintiff to lack the appropriate copyrights, but lack of discovery in these case prevents that issue from coming to light. (*Id.*)

3

of Davi H. Madden ("Madden Dec.") ¶¶ 4-5, attached hereto as Exhibit 3.) As expected, Plaintiff produced no evidence of any kind to support its claims against Brinkley or any other of the Doe defendants despite the service of interrogatories, document requests and third-party subpoenas. (Clay Dec. ¶ 8; Madden Dec. ¶ 6; Hoole Dec. ¶ 11.) Before Defendant could file a Motion to Compel served discovery, (Clay Dec. ¶ 8) Plaintiff filed its Motions to Dismiss and Motion to Stay. (Dkt. Nos. 44, 45 and 49.)

## LEGAL ARGUMENT

### A. Local Rule Statement of Compliance

Pursuant to LR 54-2(f) Defendant states as follows: (i) the basis for the requested award is prevailing party status pursuant to 17 U.S.C. ¶ 505; the specific amount claimed is detailed through the billing records and declarations of Lisa L. Clay, Gregory N. Hoole and David H. Madden attached hereto; (iii) the required affidavit of counsel setting forth the scope of the effort, the number of hours expended, the hourly rates claimed, and any other pertinent supporting information that justifies the award are also attached hereto.

### B. Brinkley is a Prevailing Party Entitled to Reasonable Attorneys' Fees.

While the 10th Circuit has not yet formally ruled on the question of whether voluntary dismissal with prejudice confers "prevailing party" status on a copyright Defendant for purposes of § 505, this Court has cited *Cadkin v. Loose*, 569 F.3d 1142, 1147-49 (9th Cir. 2009) favorably for such premise. Section 505 "authorizes the award of reasonable attorney's fees to the prevailing party in a suit under the Act… District courts are to use their discretion in awarding attorney's fees and costs… [and such decision] will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice…" *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398

F.3d 1193, 1200-01 (10th Cir. 2005) (upholding denial of attorneys' fees where "the district court appropriately considered the applicable legal standard and the facts of the case.")

"Section 505's provision for attorneys' fees to prevailing defendants in addition to prevailing plaintiffs recognizes 'the important role played by copyright defendants' in advancing the objective of the copyright act." *Perfect 10, Inc. v. Giganews*, No. CV 11-07098-AB, 2015 U.S. Dist. LEXIS 54063 at *8 (C.D. Cal. March 24, 2015) (citations omitted) (awarding nearly six million dollars in attorneys fees and costs to prevailing party defendant).

### C. The *Fogerty* Factors All Support an Award of Fees.

In determining whether, and to what extent, to award fees and costs, the Court should consider the so-called "*Fogerty* Factors:" "(1) frivolousness, (2) motivation, (3) objective unreasonableness[,] and (4) the need in particular circumstances to advance considerations of compensation and deterrence." *Kirtsaeng v. John Wiley & Sons*, 136 S. Ct. 1979, 1985, *citing Fogerty v. Fantasy, 510 U.S. 517, 534 (1994).*

Here, Defendant prevailed *by forcing Plaintiff to file a Motion to Dismiss its own claims*, presumably knowing it had no evidence or possibly even the underlying right to file suit. Defendant will never have the chance to determine whether Plaintiff should never have filed this case (or any of the others), if it had earlier licensed away the rights it was purporting to enforce. Under either scenario – lack of evidence of infringement or lack of rights in the copyright – Plaintiff should not have proceeded against Defendant in the first instance if its only goal was to extort a settlement.

Regarding frivolousness, the weakness of Plaintiff's position appears self-evident from their decision to dismiss their own claims. Clearly if they believed they could have proven infringement, they would have pursued the matter and sought fees when they prevailed. The fact

that they did not should be deemed *per se* evidence of frivolousness by this Court.

Defendant can only speculate about Plaintiff's motivation (factor two), but it seems logical that if Plaintiff knew – potentially before the case was even filed – that there was no basis for its claims, it could only hope that Defendant would run out of resources to mount a defense before the Court learned that Plaintiff's claims had no merit.

Regarding *Fogerty* factor (3) – the unreasonableness of arguments made – the only legal arguments plaintiff has made were in its Motion to Dismiss, a Motion that was filed not for the reasons stated therein, but likely at the behest of the litigation model of the real parties in interest, Guardaley/CMS and Millennium. (Clay Dec. ¶ 9.) Filing a motion for such improper purpose is objectively unreasonable.

It is the last *Fogerty* factor, "compensation and deterrence," that is of particular importance here. This consideration is often thought of as compensating the plaintiff for injury it suffered from the infringement, and deterring other would-be infringers. But equally important is to compensate a *defendant* for defending baseless claims and to deter abusive litigation conduct by other one-time rightsholders who might be attracted by the opportunity to obtain substantial settlements from a large number of targets with little risk to themselves. A court may award fees "to deter repeated instances of copyright infringement or overaggressive assertions of copyright claims…") *Kirstaeng*, 136 S. Ct. at 1989.

It would be a miscarriage of justice if these plaintiffs were allowed to seek millions of dollars in alleged damages from defendants but not pay for its decision to continue litigation against an innocent party. Denying attorneys' fees in this situation would be akin to providing license to other BitTorrent plaintiffs to threaten Internet subscribers as follows: "if you do not settle by paying us the $4900 originally demanded, we will force you to incur dozens of times as

much in legal fees to continue the fight, and even if you win, we will escape unscathed." Such a license would be contrary to the goals of the Copyright Act and the Supreme Court's analysis of those goals. *See*, *e.g.*, *Fogerty v. Fantasy*, 510 U.S. 517, 527 (1994): "Because copyright law ultimately serves the purpose of enriching the general public through access to creative works […] defendants who seek to advance a variety of meritorious copyright defenses **should be encouraged to litigate them**…")

D. **Defendant Brinkley's Fee Request is Reasonable.**

The declarations of Lisa L. Clay, Gregory N. Hoole and David H. Madden all set forth (1) the scope of the effort, (2) the number of hours expended, (3) the hourly rates claimed, and (4) other pertinent supporting information that justifies the award as follows:

**Scope of the Effort**

Defendant Brinkley retained counsel to defend him in this matter, whether that meant a quick settlement or seeing the case through to trial. (Clay Dec. ¶ 12.) Attorney Clay was hopeful, particularly in light of her prior success defending BitTorrent claims in other jursidictions, that Plaintiff would quickly make a settlement offer rather than litigate a baseless claim. (*Id.*) But she also knew from prior experience that these plaintiffs can be terribly aggressive. (*Id.*) For that reason, she prepared the client for the worst, including significant fees and costs. (*Id.*)

**Number of Hours Expended**

Representation in this matter first included substantial efforts to obtain dismissal. (Clay Dec. ¶ 4.; Hoole Dec. ¶ 8.) Once it became clear Plaintiff had no interest in being reasonable or providing evidence to support its claims in the absence of discovery so that Defendant could evaluate the merits of Plaintiff's $4900 demand, Defendant expended significant time researching the potential for counterclaims other than a declaration for non-infringement,

followed by the drafting and editing of the filed answer and counterclaim. (Clay Dec. ¶ 13.) Defendant continued to seek settlement premised upon Plaintiff's payment of defendant's fees and costs to date, but Plaintiff refused to respond to these offers throughout the course of the litigation. (Clay Dec. ¶¶ 4-6, 15; Hoole Dec. ¶¶ 8-9.)

Discovery necessitated the inclusion of "technical" counsel David H. Madden, an experienced BitTorrent defense attorney, who assisted with the drafting and editing of discovery along with compliance efforts prior to the Motion to Dismiss. (Madden Dec. ¶ 4-5.)

Defendant invested significant time opposing Plaintiff's Motion to Dismiss, hoping the Court would take notice of Plaintiff and its counsel's troubling litigation tactics, particularly the timing of their Motions to Dismiss, which were clearly intended to avoid a motion to compel. (Clay Dec. ¶14; Hoole Dec. ¶ 12; Madden Dec. ¶ 7.);

Finally, after Defendant's most recent settlement demand was ignored, Defendant incurred fees drafting the instant motion. (Clay Dec. ¶ 15.)

To date Attorney Clay has billed 110.20 hours; Attorney Hoole has billed 45.7 hours, and Attorney Madden has billed 20.10 hours.[2] (Clay Dec. ¶ 15; Hoole Dec. ¶ 5; Madden Dec. ¶ 9.)

**Hourly Rates Claimed**

Attorney Clay, whose primary practice is in the Chicago metropolitan area where hourly rates for attorneys of comparable skill and experience range anywhere from $250 - $1200/hour, charges between $300 - $400/hr, and is charging $400/hour in this matter. (Clay Dec ¶ 15.) That hourly rate is based on the rates charged in her metropolitan location; her years of experience (16); the difficulty and technical complexity of BitTorrent cases; and the paucity of counsel who

---

[2] Attorney Madden's bill does not include time billed after mid-May of 2018.

are willing to accept these representations given the usual financial resources of the clients and the risk of non-payment from the litigating parties. (*Id.*)

Attorney Hoole, who resides in Salt Lake City, currently bills at $325/hour and is requesting that rate here based on his significant training and over twenty years of complex litigation experience. (Hoole Dec. ¶¶ 2-5.)

Attorney Madden, whose primary practice is in the Portland metropolitan area, does mostly work representing small businesses, start-ups and individuals before the U.S. Parent & Trademark Office. (Madden Dec. ¶ 10.) Madden's requested rate of $312 in this matter is based on (1) Oregon State Bar salary surveys, which are used to support fee petitions, which suggests a range for attorneys of his skill and number of years practice of between $288 and $327, and (2) his prior experience in BitTorrent cases, where the District Court of Oregon has previously approved an hourly rate of $312. (Madden Dec. ¶¶ 11-13.)

**Other Relevant Factors**

Defendant Brinkley has legitimate reason to believe that Criminal Productions had no basis for the instant lawsuit. Indeed, discovery being undertaken in related cases calls the BitTorrent litigation model pursued by Millennium Films and related alleged copyright holders into serious question. Recent discovery in another Millennium case pending in the District of Nevada, *LHF Productions, Inc. v. Kabala*, No. 16 cv 2028 suggests that the Plaintiff is not the real party in interest; that the Plaintiff has no meaningful role in the litigation whatsoever; and that no "evidence" is reviewed by the Plaintiff or its attorneys prior to filing. (Clay Dec. ¶¶ 9-10.) Contracts produced suggesting a relationship between Guardaley/CMS [the entity long believed by BitTorrent defense attorneys to be the real party in interest] and MaverickEye, the "investigator" here, suggest that Plaintiff's counsel has to pay a third party to obtain that

evidence. (Clay Dec. ¶ 9.) In short, if this case had continued, Defendant is confident it would have established that Plaintiff lacked a good faith basis for its filing in the first instance, and that the claims were brought in bad faith.[3] (Clay Dec. ¶ 11.)

## CONCLUSION

As a prevailing party Defendant Darren Brinkley is entitled to an award of reasonable costs and fees as described in detail herein.

**WHEREFORE**, Defendant Darren Brinkley respectfully requests entry of judgment against Plaintiff Criminal Productions in the amount of $62,818.35 in attorneys' fees and costs.

DATED this 20th day of July, 2018.

*/s/* Gregory N. Hoole
HOOLE & KING, L.C.
Attorneys for Defendant Darren Brinkley

*/s/* Lisa L. Clay
Lisa L. Clay, Attorney at Law, pro hac vice
Attorneys for Defendant Darren Brinkley

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of July, 2018, a true and correct copy of the foregoing document was filed electronically with the Court using the CM/ECF system, which sent notice of the same via email to all CM-ECF participants who have appeared in this case.

*/s/ Gregory N. Hoole*

---

[3] In the absence of this evidence §505, and not 28 U.S.C. § 1927, which entitles a party to seek payment from a party's attorney, is Brinkley's only remedy.