IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| Criminal Productions, Inc.<br><br>    Plaintiff,<br>v.<br><br>Darren Brinkley,<br><br>    Defendant. | Case No. 2:17-cv-00550-DBP |

**DECLARATION OF ATTORNEY LISA L. CLAY**

    1.    I am an adult resident of the State of Illinois and an attorney who is licensed to practice law in Illinois, Washington (inactive) and Washington, D.C. (inactive). I am admitted pro hac vice in this matter.

    2.    I am familiar with the facts and circumstances set forth in this declaration and can testify to those matters stated herein if called upon to do so.

    3.    I have been representing BitTorrent litigation (so-called "copyright trolling") defendants since 2015. I have informally advised or formally represented approximately 50 defendants in cases across the country. I make the representations contained in this declaration based on my experience with not only this plaintiff, but other BitTorrent plaintiffs and their counsel in the seven jurisdictions where I have represented or assisted in the representation of a named defendant. I hereby incorporate my prior declaration in support of Defendant's

1

Opposition to Plaintiff's Motion to Dismiss Defendant's Counterclaim hereto as Exhibit A.

4. I authorized my local counsel to attempt to settle this matter prior to my researching counterclaims and drafting and filing an answer and counterclaim. Mr. Hoole's attempts were unsuccessful. Counsel and I agreed throughout this representation that we would discount our fees for the sake of a settlement but Plaintiff's counsel would never so much as respond to our demands. Rather, Plaintiff continued to make ever-diminishing offers as outlined in my original declaration (Exhibit A.)

5. We made another settlement offer at Plaintiff's request in late January of 2018, but Plaintiff never responded. After discovery was served and Plaintiff once again began making noise about dismissal without payment of Defendant's fees and costs, my April 16, 2018 email made it clear my client expected to be paid his fees and costs if there was to be any form of settlement. Finally, on July 10, 2018, I sent Plaintiff correspondence offering to settle this matter for a discounted percentage of Defendant's fees and costs to date. (Exhibit B.) Plaintiff never responded.

6. The only offers Plaintiff made to settle this matter did not include compensation to Brinkley for his costs and attorneys' fees in defending this matter.

7.      I have represented dozens of defendants, potentially more, who have requested, either in discovery or as part of settlement negotiations, evidence of infringement. In every one of those cases the plaintiff voluntarily dismissed – several times attempting to do so without prejudice to avoid a fee petition – once it became clear I would pursue the issue through formal discovery, including motions to compel. The most glaring recent example was in the Northern District of Illinois. My client Ernesto Mendoza filed an answer and counterclaim in a case filed by another shell plaintiff associated with Criminal, Bodyguard Productions. Within a week of Plaintiff's mandatory initial disclosures being due – disclosures that would obligate them to provide their evidence of infringement – their attorney contacted me to seek my agreement to voluntarily dismiss. No mention was made of payment of my client's fees and costs.

8.      At no time during the year this case was pending did Plaintiff ever produce any evidence of infringement despite our formal and informal discovery requests. I had written at least one if not more than one meet and confer letters and was in the process of outlining a motion to compel when we received Plaintiff's Motions to Dismiss.

9.      During the pendency of this litigation I have learned many things about the BitTorrent model, most recently from the 30(b)(6) witness for LHF Productions, Inc. in the case *LHF Productions, Inc. v. Kabala*, 16 cv 2028 (D.

3

Nev.) LHF Productions, Inc., Criminal Productions, Bodyguard Productions and other so-called Plaintiffs are referred to in the movie industry as "special purpose entities" or "SPEs." An SPE is set up to make a film. It is wholly owned by the movie studio that makes the film. In the case of LHF, Criminal, Bodyguard and many others, Millennium Films, which also uses a host of other corporate entities (A & T IP Inc., Millennium Media, Millennium IP, Inc., etc.) is one of the real parties in interest. The other real party in interest is the entity responsible for running the technology that searches the internet for potential infringement, and for running the litigation. This entity frequently changes names and is set up in Germany in order to hide behind the Hague convention, which makes legal process for depositions and summons all but impossible. Current contracts with Millennium produced in the *Kabala* matter[1] suggest the following: (1) the technical entity (and the entity that is paid the most as a percentage in terms of proceeds from litigation) is currently referred to as "Copyright Management Services, Ltd." or "CMS," but both Millennium's 30(b)(6) witness and the attorney retained by CMS to represent LHF both refer to CMS as "GuardaLey"; (2) CMS/GuardaLey, and not the Plaintiff, hires the lawyers to file these claims; (3) CMS/GuardaLey

---

[1] Plaintiff in the *Kabala* matter has agreed to produce versions of the contracts referenced herewith without the current confidential designation, but with redactions of the percentages described in the contracts, on grounds that they "can harm the parties to the agreements." Kabala is in the process of drafting a motion to require LHF to un-designate the documents in their entirety. The documents will be produced to this court as part of Brinkley's reply to this motion, if any, after they have been undesignated, or upon request by the Court, under seal if necessary.

4

and not the Plaintiff, is the party responsible for the litigation, and presumably the entity to whom the attorney reports; (4) CMS/GuardaLey, and not the Plaintiff, pays the lawyers, through a contingency model that first reimburses CMS/Guardaley, then pays the attorneys, and then, presumably, Millennium; (5) neither the Plaintiff nor the lawyer filing the case appears to review any evidence prior to the case being filed, likely because they will be charged by GuardaLey to obtain it; and (5) Millennium and the Plaintiff have no skin in the game: they do not pay costs, fees, or any damages. It is Guardaley and the lawyers that financially benefit from these cases. It is my assumption that the reason an SPE is used as the Plaintiff is to protect the assets of the real parties in interest – Millennium and GuardaLey. Because Criminal is a Millennium film I have no reason to believe that these same arrangements would not apply to this case.

10. The 30(b)(6) declarant also testified that the rights LHF Productions would presumably require to file these suits were transferred to another entity prior to filing of the *Kabala* suit, calling into question whether LHF, like F & D in the *Zhang* matter discussed in footnote 3, had (or has) standing. Based on these Plaintiffs' seeming fear of discovery of any kind, I suspect that it is not unusual for an SPE to lack standing.

11. I have little doubt that if discovery had continued we would have learned that Plaintiff never had any evidence of infringement, and that the claims at issue were therefore brought in bad faith.

12. The retainer with Mr. Brinkley is for his defense in the instant litigation. He agreed to pay costs, a retainer to Attorney Hoole's firm of $500, and be billed at $400/hour by me and comparable rates by any necessary co-counsel. We were hopeful the case would be resolved quickly as Mr. Brinkley is not a man of means. When we were forced to answer and counterclaim, an outcome I braced myself for given my prior experience with very aggressive plaintiffs in these cases, I prepared Mr. Brinkley for the worst, and made certain he understood the potential for significant costs and fees. My co-counsels and I were extremely disappointed that Plaintiff refused to dismiss him and forced us to litigate instead.

13. My invoice for services rendered contains billing in the following stages: pre-answer negotiations and research; answer preparation; discovery and enforcement efforts; motion to dismiss; petition for fees. The number of hours and description of those hours are set forth in detail on the redacted and color-coded billing records attached hereto as Exhibit C.

14. My colleagues and I spent significant time responding to Plaintiff's Motion to Dismiss because we sincerely wished the Court would provide us the

opportunity to maintain the litigation long enough to explore our concerns regarding the questionable nature of these claims.

15. I only began billing to draft the instant Petition after the deadline for response to my latest settlement offer had passed.

16. I reside in the Chicago area and most of my practice is in the Northern District of Illinois. I have been practicing law since 2002. Prior to becoming a solo practitioner in 2012, I worked for several large defense firms, McGuireWoods, LLP and Shefsky & Froelich, now Taft, Stettinius & Hollister. I have been a solo practitioner since 2012. I have no employees and therefore no administrative assistance. My practice is focused on employment law, consumer troll defense (which includes ADA trolling, copyright trolling and piracy trolling[2]), and some general commercial disputes, although I see very little of that work these days given my focus on troll defense. I estimate that approximately 40% of my practice for the past five years has been dedicated to consumer troll defense, most of which is "pro" bono or "low" bono billing. Hourly rates in the Chicago area vary dramatically. Large firms charge upwards of $1200/hour, while a 2017 Legal Trends Report conducted by Clio suggested an average rate in Chicago of $312/hour. (Exhibit D.) The Laffey matrix for 2017 suggests an hourly rate of $685/hour for a person with between 11 an 19 years of experience. *See*

---

[2] http://www.abajournal.com/magazine/article/pay_tv_theft_claims

https://www.advisoryhq.com/articles/attorney-fees/.  My $400/hour rate in these matters is based on metropolitan rates in my area; my 16 years of practice experience; the technical complexity of these cases and my unique subject matter expertise in troll defense; and the small number of attorneys willing to accept these representations given the risk of non-payment.

    I, Lisa L. Clay, declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Dated: July 20, 2018                          /s/ Lisa L. Clay