Todd E. Zenger (5238)
DUREN IP
610 E. South Temple Street, Suite 300
Salt Lake City, Utah 84102
Phone: (801) 869-85358
Email: tzenger@durenip.com

**Attorney for Plaintiff**

# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH

| | |
|---|---|
| CRIMINAL PRODUCTIONS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>DOES 1-32, INCLUDING DARREN BRINKLEY,<br><br>Defendants. | Civil Action No. 2:17-cv-00550-DBP<br><br>Magistrate Judge Dustin B. Pead<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES (ECF 65)** |

Plaintiff, Criminal Productions, Inc., by and through its counsel of record, submits this opposition to Defendant's motion for attorneys' fees (ECF 65).

## A.     Summary of Opposition

Defendant unreasonably delayed and multiplied proceedings. The windfall of attorneys' fees Defendant requests should be denied.

The evidence as to the amount of fees sought by Defendant's are excessive and/or leave the court to guess as to the reasonableness of the fees. The amount of fees requested by Defendant should be denied.

**B.**     <u>**Pertinent Facts and Circumstances**</u>

Mr. Brinkley subscribed for Internet access through CenturyLink.[1]   In doing so Mr. Brinkley acknowledged his obligation under CenturyLink's Acceptable Use Policy (AUP) to be responsible for infringing uses and facilitating infringing uses of IP 70.57.92.179:

*Prohibited Conduct.*

> *General. <u>Users will not use the Services to transmit, distribute or store material in a manner that</u>: (a) violates any applicable law or regulation; (b) may adversely affect the Services or Users; (c) may expose CenturyLink to criminal or civil liability or (d) <u>violate, infringe upon or otherwise misappropriate any third party rights, including intellectual property rights</u>, rights of publicity and privacy rights.  <u>Users are prohibited from facilitating the violation of any part of this AUP</u> or applicable third-party policies, including, but not limited to transmitting, distributing, or otherwise making available any product or service that violates this AUP or another provider's policy.*
> 
> \*          \*          \*          \*
> 
> *Intellectual Property.  Material accessible through the Services may be subject to protection under privacy, publicity, or other personal rights and intellectual property rights, including but not limited to, copyrights and laws protecting patents, trademarks, trade secrets or other proprietary information. <u>Users will not use the Services in any manner that would infringe</u>, dilute, misappropriate, or otherwise violate any such rights.  If a domain name is used with any of the Services, it may not be used in violation of the trademark, service mark, or other rights of any third party.*
> 
> \*          \*          \*          \*
> 
> *CenturyLink reserves the right to cooperate with legal authorities and third parties in the investigation of any alleged wrongdoing related to this AUP, including the disclosure of the identity of the User that CenturyLink deems responsible for the wrongdoing.  CenturyLink will not be liable for any damages of any nature suffered by any User, or any third party resulting in whole or in part from CenturyLink's exercise of its rights under this AUP.*
> 
> \*          \*          \*          \*
> 
> *In most cases, CenturyLink will notify Users of complaints received by CenturyLink regarding an alleged violation of this Policy. <u>You agree to promptly investigate all such complaints and take all necessary actions to remedy any violations</u> of this Policy. CenturyLink may inform the complainant that you are investigating the complaint and may provide the complainant with the necessary information to contact you directly to resolve*

---

[1] Ex. 1, Brinkley Declaration (ECF 53-3), par. 3.

*the complaint. You shall identify a representative for the purposes of receiving such communications.*[2]

In January 2017, a user of IP 70.57.92.179 was regularly using it to obtain movies, including Plaintiff's copyrighted work, *Criminal*.[3] Specifically, Plaintiff's investigator, MaverickEye UG, using its infringement detection system discovered that IP address 70.57.92.179 was downloading and distributing the motion picture *Criminal*.[4]  This is evidenced by infringement capture logs, which detail the exact dates and times of each infringing transaction. Additionally, between August 2016 and January 2017, BitTorrent activity involved the participation of IP 70.57.92.179 in other torrent swarms distributing third party works, all emanating from Defendant's IP 70.57.92.179.

With this evidence and in an effort to stop the infringement, Plaintiff filed the Complaint on June, 6, 2017 (ECF 2). This Court granted discovery of the Internet Service Provider to obtain the subscriber's true identity on June 13, 2017 (ECF 8).  Within days, Plaintiff served a corresponding subpoena on CenturyLink informing CenturyLink of the violation of its Acceptable Use Policy.  Thereafter in the later part of June 2017, CenturyLink began sending notice letters to its subscribers regarding the subpoena request.[5]

Brinkley admits receiving a notice letter from CenturyLink.[6]

Brinkley admits under oath that he "took the 'head in the sand' approach and ignored the subpoena."[7]

---

[2] http://www.centurylink.com/aboutus/legal/acceptable-use-policy.html (emphasis added).
[3] *Criminal* is an American-British action crime thriller drama film directed by Ariel Vromen and written by Douglas Cook and David Weisberg. The film is about a convict who is implanted with a dead CIA agent's memories to finish an assignment. The film stars Kevin Costner, Gary Oldman, and Tommy Lee Jones.  This motion picture was produced by Plaintiff at great expense.
[4] ECF 5.
[5] Contrary to Brinkley's sworn declaration of May 2018, ECF 53-3 par. 3, asserting receipt of CenturyLink's notice letter in "April or May."
[6] Ex. 1, ECF 53-3, par. 3.
[7] *Id.*

In its July 2017 response to the subpoena, CenturyLink identified Darren Brinkley as the subscriber of IP 70.57.92.179 at the identified time of the alleged infringement.  Defendant does not contest that he was the subscriber to IP 70.57.92.179 provided by CenturyLink in the relevant time period in January 2017.

After receiving CenturyLink's subpoena response, Plaintiff sent a settlement letter to Mr. Brinkley in July 2017, including a request to waive service with the corresponding Rule 4 forms.

Mr. Brinkley admits under oath: "I ignored it, hoping it would go away."[8]

Mr. Brinkley refused to waive formal service of process.

Failing to receive any response from Mr. Brinkley, pursuant to Rule 4 and the order of the Court,[9] Plaintiff obtained a summons and served Mr. Brinkley in early December 2017.

On December 14, 2017, after being served, Mr. Brinkley called counsel on the telephone.[10] Mr. Brinkley stated that he had a roommate from April 2016 to October 2017 who used the Internet to watch movies.[11]   In an effort to resolve the matter, Mr. Brinkley was asked to provide exculpatory evidence, an affidavit wherein he swore as to his non-involvement, and any information he could provide which would allow Plaintiff to identify and contact the infringer and/or his roommate.    In exchange, Mr. Brinkley was promised to be dismissed without further legal proceedings.  Mr. Brinkley refused all requests and promises. Mr. Brinkley would not even provide an email address for further communications.   Mr. Brinkley never stated he was represented by counsel.

On December 22, 2017, Mr. Greg Hoole called counsel for Plaintiff.  To avoid burdensome, unnecessary, and costly litigation, Plaintiff advised Defendant through counsel on December 22,

---

[8] *Id.,* par. 4.
[9] ECF 11, order extending service under Rule 4.
[10] Declaration of Todd E. Zenger, paras. 4-13, exhibit 2 hereto.
[11] *Id.*, par. 6.

2017 that he was under no obligation to litigate. Indeed, on December 22, 2017, in writing Plaintiff

informed Defendant through counsel that he was released from any obligation to respond to the

Complaint or proceed with litigation or motion practice. Further, Plaintiff relieved Defendant of

any requirement to respond to the summons and guaranteed that no default would be taken:

> No response is necessary at this time. Let's see if we can settle this
> matter.
>
> My client grants an open-ended extension of time for responding to
> the summons; a release is given of any obligation to respond to the
> summons and there is no obligation to respond during good faith
> settlement discussions. My client will not seek any default during
> settlement negotiations and will not seek default in the future
> without giving an opportunity to respond to the summons and
> complaint, if needed. Therefore, there is no need to file any motions
> or responses at this time. My client seeks to avoid any unnecessary
> fees, costs and expenses related to further legal proceedings.

Dec. 22, 2017 email from Todd Zenger to Greg Hoole, Ex. 3 hereto.

Again Plaintiff sought the identification of the infringer and any exculpatory evidence vis-

à-vis Mr. Brinkely in an effort to quickly identify the infringer:

> For you[r] information, prior to your contacting me, Mr. Brinkley
> contacted me directly. He informed me that he had a roommate at
> the time in question. I requested that Mr. Brinkley provide me the
> name and contact in formation of that roommate. I request it again.
>
> My client needs information and documentation as to the nature of
> the family/household/guests/roommates/users of Internet over the
> identified IP service. Which parents/guests/children/etc. and their
> ages access the Internet, particularly in the time frame in
> question? What electronic devices in the household connect to the
> Internet? Is a password required to access the Internet? Who
> manages access? If it was not directly the subscriber, please provide
> the contact information of the users authorized to use the Internet at
> the time in question and I will follow up with them. If not, I am left
> to follow up with the subscriber to address the infringement
> observed over the Internet under the subscriber's control.
>
> I am confident that we can settle this matter quickly without the need
> of any further legal filings or proceedings.

*Id.* On behalf of Defendant counsel accepted the extension without any qualification: "Thank you for your professional courtesy in granting an extension." *Id.*

Contrary to the agreed-upon extension, without notice to Plaintiff, Defendant filed an Answer and Counterclaim on January 12, 2018.[12]

On the same day, Plaintiff continued to be diligent in attempting to dismiss Mr. Brinkley. Specifically, on January 12, 2018, Plaintiff again requested verified evidence that Mr. Brinkley was not the infringer so he could be dismissed without delay from the action,  Plaintiff explained:

> My client remains desirous to settle.  Here is the issue.
>
> Mr. Brinkley controls  IP 70.57.92.179 via his Internet access password.  He asserts he is not the infringer.  He admits that others have used  IP 70.57.92.179.  To test Mr. Brinkley assertion, my client had hoped to be able to informally identify the other users of IP 70.57.92.179 so that if another is identified as the actual infringer Mr. Brinkley would be dismissed as I promised you earlier.
>
> If Mr. Brinkley persists in withholding the identity of other persons whom he authorized to use his Internet by giving them the access password, he is facilitating infringement and should also be liable for infringement.    Mr. Brinkley cannot withhold those identifications from my client in discovery with impunity.
>
> We can try to get to the bottom of this now, informally, or we can proceed in costly, formal discovery and get to the bottom of it after that.
>
> Provided Mr. Brinkley is not the infringer, which is not yet established, my client is anxious to excuse him from the case.  We have evidence that my client's movie was being shared in a torrent swarm over  IP 70.57.92.179 controlled by Mr. Brinkley.  Mr. Brinkley uses IP 70.57.92.179.  My client has been provided no corroborative evidence that Mr. Brinkley was not the user at the alleged time of infringement.  He has provided no evidence of use by others.  As it stands, my client has a prima facie claim of infringement as to Mr. Brinkley.  It is highly unlikely that the court will award attorney's fees to Mr. Brinkley for my client's pursuing a prima facie claim.  If discovery establishes that he is not the

---

[12] ECF 32.   This required a response from Plaintiff, ECF 36.

> infringer, he will be forthwith dismissed.  However, if he persists in refusing to cooperate in identifying the infringer in discovery my client will ask the court via sanction to deem Mr. Brinkley the infringer.
>
> All this procedure is unnecessary.  My client wishes and requests that unnecessary, multiplied proceedings be avoided by working together now as to the identity of the other users of IP 70.57.92.179 so resolution or liability as to Mr. Brinkley can be achieved expeditiously.

January 12, 2018 email from Todd Zenger to Greg Hoole, Ex. 4 hereto.  Plaintiff also explained:

> To date, there is zero evidence of hacking.  Absent such, Mr. Brinkley himself, or his permitted/authorized user, participated in a torrent swarm.  If he attempts to hide the other, potential infringers he is subject to sanctions.  (*Cf. Killer Joe v. Doe*, 6:15-cv-00494: contempt order and sanctions against subscriber for not participating in identifying infringer, see copy attached).
>
> My client remains anxious to resolve this infringement matter as indicated in my January 12, 2018 6:22 PM email.

January 15, 2018 email from Todd Zenger to Greg Hoole, Ex. 5 hereto (case attached as Ex. 6).

Despite Plaintiff's efforts to dismiss Mr. Brinkley expeditiously, Defendant unilaterally multiplied proceedings thereafter by insisting on scheduling a Rule 16 conference, preparation of a 26(f) report, and ultimately seeking a court discovery order.

On January 26, 2018 after the Rule 16 conference, Plaintiff again sought to excuse Mr. Brinkley from the case without payment of any money to Plaintiff:

> In the alternative, if defendant provides a sworn statement as to his lack of involvement and the names and contact information of *those* persons authorized to use IP 70.57.92.179,  Criminal Productions will dismiss Mr. Brinkley with prejudice without payment of a monetary sum.  In this way, this matter can be totally resolved as to Mr. Brinkley with a matter of a few days.

January 26, 2018 email from Todd Zenger to Greg Hoole, Ex. 7 hereto. However, Defendant

withheld the requested information and began pursuit of discovery. On February 2, 2018, Plaintiff

again sought to terminate this proceeding:

> Nevertheless, in the spirit of compromise, I am authorized by
> Criminal Productions to avoid further pleadings and discovery as
> follows. Criminal will dismiss this matter as to Mr. Brinkley and
> require no monetary damage if (1) Mr. Brinkley is able to and does
> provide a sworn declaration establishing under oath his lack of
> involvement in the alleged infringement, and (2) covenants to
> refrain from participating in unlicensed bittorrent exchanges of the
> movie *Criminal*. This allows my client to control its movie and
> avoid further proceedings for all involved.

February 2, 2018 email from Todd Zenger to Greg Hoole, Ex. 8 hereto. Defendant again withheld

the desired proof of exculpatory evidence.

Finally, on March 16, 2018, after Defendant had filed his Answer and required Plaintiff to

respond to the counterclaim, Defendant sent Plaintiff his Initial Disclosure pursuant to Fed. R. Civ.

P. 26(a), wherein he identified the name of his roommate, but withheld the name of his former

fiance. After investigating Defendant's roommate, Plaintiff was of the position that discovery may

show that Defendant's roommate may well be the infringer. Indeed, there is a correlation between

the roomate's publicly declared interests in social media and the content listed in MaverickEye's

additional evidence. As such, Plaintiff no longer believed that Defendant to be the infringer and

asked Mr. Brinkley to verify the same under oath. To accomplish this, Plaintiff drafted an

exculpatory declaration for Mr. Brinkley.[13] However, Mr. Brinkley resused to sign it.

Defendant, through counsel, embarked on a campaign of unnecessarily multiplying

proceeding. Plaintiff sought to curtail this waste. Plaintiff requested that Defendant refrain from

---

[13] Plaintiff's counsel drafted the declaration to further avoid any expense to Defendant.

the fees, costs and/or expenses of discovery in order to first pursue settlement.  Defendant refused.

Defendant pressed forward with discovery and third-party discovery.

Recognizing the out of control spin Defendant was driving in this case, Plaintiff sought

dismissal of its action against Mr. Brinkley[14] and dismissal of his counterclaim[15] and provided

Mr. Brinkley a covenant not to sue, even before receiving his May 15, 2018 declaration.[16]  Instead

of recognizing the final nature of this disposition as to Mr. Brinkely, Defendant's counsel again

unnecessarily multipled proceeding by expending tens of thousands of dollars filing preparing and

filing papers opposing this final disposition as to Mr. Brinkley.

Plaintiff has been reasonable in trying to identify and verify the infringing user of IP

70.57.92.179 so as to avoid unnecessary fees, costs and expenses.  Defendant unreasonably

withheld the identity and verification of conduct related to the observed infringement.  Because

Defendant has unnecessarily multiplied proceedings Defendant should not be awarded fees, let

alone the windfall amount created by unnecessary proceedings.

## C.    ARGUMENT POINTS AND AUTHORITIES

Under governing principles related to discretionary award of attorneys fee, Defendant's

request to be awarded fees should be denied.  Further, the amount sought is excessive, not properly

established and is not reasonable under the circumstances.

---

[14] ECF 44, filed May 7, 2018.
[15] ECF 45, filed May 7, 2018.
[16] ECF 53-3, filed May 16, 2018.

### 1.    Attorney Fees are not Warranted to Defendant Under the Circumstances

The Supreme Court has declared that under 17 U.S.C. 505 a discretionary award of attorney's fees is to be "based on the totality of circumstances in a case."[17] This requires "a more particularized, case-by-case assessment."[18]

Under the Copyright Act, "[t]here is no precise rule or formula for making [attorneys' fees] determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.'"[19] Some non-exclusive factors to also consider are frivolousness, motivation, objective unreasonableness and any need in particular circumstances to advance considerations of compensation and deterrence.[20]  "[S]uch factors may be used to guide courts' discretion, so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner."[21]  "[I]t generally does not promote the purposes of the Copyright Act to award attorney fees to a prevailing defendant when the plaintiff has advanced a reasonable, yet unsuccessful claim."[22]

That is, "[a]lthough objective reasonableness carries significant weight, courts must view all the circumstances of a case on their own terms …."[23]  [P]lacing substantial weight on objective reasonableness also treats plaintiffs and defendants even-handedly….  No matter which side wins a case, the court must assess whether the other side's position was (un)reasonable."[24]  The Supreme

---

[17] *Kirtsaeng v. John Wiley & Sons, Inc.*, 136. S.Ct. 1979, 1985 (2016).
[18] *Fogerty v. Fantasy, Inc.,*, 510 U.S. 517, 533 (1994).
[19] *Id., at* 534 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436-37, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)).
[20] *Kirtsaeng,* at 1985.
[21] *Fogerty*, at 534 n.19.
[22] *White v. Alcon Film Fund, LLC*, No. 1:13-cv-1163-TCB, 2015 U.S. Dist. LEXIS 180622, at *10 (N.D. Ga. Jan. 30, 2015).
[23] *Kirtsaeng,* at 1989.
[24] *Id.,* at 1988.

Court also warned that "[i]f some court confuses the issue of liability with that of reasonableness, its fee award should be reversed for abuse of discretion."[25]

### Reasonableness of the Merits (Frivolousness)

In this case, the circumstances establish that Plaintiff's attempt to enforce its copyright was reasonable.  Plaintiff owns a copyright registration.[26]  Plaintiff has evidence showing that its copyrighted work was being passed without license over IP 70.57.92.179.[27]  The Internet service provider of IP 70.57.92.179, CenturyLink, identified Mr. Brinkley as the subscriber responsible for use of IP 70.57.92.179.  As a result, Plaintiff had a prima facie case of copyright infringement over IP 70.57.92.179 under the control of Mr. Brinkley.  Indeed, under the Copyright Act "plaintiffs are encouraged to litigate meritorious claims of infringement."[28]  The reasonableness of the merits of Plaintiff's infringement action in this case is evidenced by the consent judgments proceedings in this case based on the same bittorrent swarm seen over Mr. Brinkley's Internet service.[29]

### (Un)reasonableness of the Parties Positions and Conduct

The reasonableness of Plaintiff's litigation conduct is also evidenced by its repeated attempts to exonerate Mr. Brinkley early on and to avoid unnecessary fees, costs and expeneses.

Mr. Brinkley conduct was unreasonable:

> He used the "head-in-the-sand" approach to the June 2017 communication from CenturyLink about infringement.

> He ignored the July 2017 letter from Plaintiff seeking to resolve this matter.

---

[25] *Id.*
[26] ECF 2-1.
[27] ECF 5.
[28] *Fogerty,* at 527.
[29] ECF 41-43, 48

On December 14, 2017 he made bare denials.

He ignored counsel's December 14, 2017 request for exonerating information.

He rejected Plaintiff's December 14, 2017 offer of dismissal upon signing a sworn statement.

At a time when he was released from any obligation to respond formally to Plaintiff's summons and complaint, he chose to proceed with unnecessary, formal litigation by hiring counsel to prepare and file an Answer and Counterclaim thereby further requiring Plaintiff to file a response.

He rejected an exonerating declaration summarizing his early discussion with counsel which was prepared at no expense to him by counsel for Plaintiff.

He chose to proceed with discovery when it was unnecessary.

He withheld identifying the name of his roommate until March 14, 2018.

He withheld any sworn statement until his May 15, 2018 declaration.

Between June 2017 and May 2018 Mr. Brinkley relied upon bare denials of non-infringement.  Plaintiff sought to exonerate him as early as December 14, 2017.  "Contrary to [Defendant's] assertion, [Plaintiff] could not have been expected simply to take his word for the fact that he had not infringed [Plaintiff's] copyrights, given the substantial evidence implicating [Defendant]."[30]  Defendant chose to risk unreasonably multiplying proceedings.  Defendant had the opportunity as early as December 14, 2017 to resolve this matter without incurring attorney's fees.  Defendant chose not to do so.  Instead he unleased counsel in a scorched earth approach.

Rewarding a defendant whose 'defense' includes the withholding of information which could have led to not only the *early* resolution of the case, but also to discovery of the true infringer,

---

[30] *E.g., Malibu Media, LLC v. Pelizzo*, 604 F. App'x 879, 881 (11th Cir. 2015) (affirming the District Court's denial of defendant's motion for attorney fees).

simply does not further the purposes of the Copyright Act.   As the *Priority Records* Court poignantly explained:

> In exercising its discretion, the Court concludes that [Defendant] would not be entitled to attorney fees in conjunction with this case, even if the dismissal were considered an adjudication on the merits. Since filing this action, Plaintiffs have taken reasonable steps to try to prosecute this case and litigate against the proper defendant(s). They brought suit against [Defendant] because she was the registered user for the IP address from which the allegedly improper downloading and file sharing occurred. As evidenced by their letters and motions, Plaintiffs have been trying to take action against only those party responsible. To the extent [Defendant] has incurred legal fees in this action, such fees are primarily the result of tactics designed to impede the ability of Plaintiffs to prosecute this action in an efficient manner…. Therefore, [Defendant]'s request for attorney fees is denied.[31]

Now having instructed   counsel to generate unnecessary fees, costs and expenses, Defendant seeks to lay them at the feet of Plaintiff.  This is unreasonable, unjust and unfair.  Here the imposition of fees would send one message – a message that is in direct conflict with the purpose of the Copyright Act: that Defendants, and their counsel, can withhold relevant and material evidence exonerating the defendant and then unreasonably and unnecessarily multiplying. Indeed, the purpose of Initial Disclosures, and discovery, is to bring such evidence to light at the earliest opportunity. And, such practices lead to the early resolution of a matter, and perhaps more importantly, identification of the actual infringer.  Defendant has failed to cite any case law which would remotely support the notion that their "gotcha" tactics serve the purpose of the Copyright Act. On the other hand, Plaintiff prosecuted its copyrights in good faith and with proper motivation. Accordingly, this factor weighs in favor of Plaintiff and against Defendant's entitlement to attorneys' fees.

---

[31] *Priority Records L.L.C. v. Chan*, No. 04-CV-73645-DT, 2005 U.S. Dist. LEXIS 20360, at *6-7 (E.D. Mich. May 19, 2005).

## Motivation

Plaintiff's Complaint emphasizes its motive of stopping infringement and being fairly compensated under the Copyright Act.[32]   Plaintiff's conduct was motivated by evidence of infringement over Mr. Brinkley's Internet service.  Plaintiff's attempts to resolve the dispute with further litigation were motivated by an attempt to avoid unnecessary fees, costs and expense.

Defendant's arguments about motivation derived from other cases in other jurisdiction under other circumstances should be rejected.

## Considerations of Compensation and Deterrence

Defendant took a risk.  He risked incurring attorneys when they were not necessary and for a period of time over which he relied upon bare denials in the face of a prima facie case of infringement.  He should not be compensated for taking that risk under the circumstances of this case.  Defendant advocates the "risk-preferring" approach rejected by the Supreme Court.[33]

When a defendant prevails despite evidence of infringement courts have denied attorney fees.[34]

Further, courts throughout the country, routinely deny fees to a defendant in peer to peer infringement cases when the plaintiff advanced reasonable claims and the infringement was

---

[32] ECF 2.

[33] *Kirtsaeng v. John Wiley & Sons, Inc.*, 136. S.Ct. at 1987-88.

[34] *Crosspointe, LLC v. Integrated Computing, Inc.*, No. 6:03-cv-558-Orl-19KRS, 2005 U.S. Dist. LEXIS 35516, at *23 (M.D. Fla. July 18, 2005) ("[A]n award of attorney's fees to infringing parties would undermine one of the primary goals of the Copyright Act, that of discouraging infringement."); *Fred Riley Home Bldg. Corp. v. Cosgrove*, 883 F. Supp. 1487, 1491 (D. Kan. 1995) ("The filing of the action caused the termination of defendants' infringing activities. The court, therefore, finds that the defendants are not prevailing parties in the action. Consequently, defendants are not entitled to attorneys' fees under 17 U.S.C. § 505."); *Johnson v. Tuff-N-Rumble Mgmt.*, Inc., 2000 U.S. Dist. LEXIS 12071, 2000 WL 1145748, *11 (E.D. La. 2000) (denying defendant's request for fees where plaintiff's claims were colorable and not objectively unreasonable).

committed by a member of the defendant's household.[35]  Mr. Brinkley's "attitude toward risk"[36] does not override Plaintiff's prima facie case and Mr. Brinkley's risk-based resolve to withhold exonerating evidence.  He should be required to bear that risk, including the associated fees, when he had been released from the risks and fees of formal litigation.

There is no compelling need to deter Plaintiff assertion of its copyrights.  "Copyright is based on the belief that by granting authors the exclusive rights to reproduce their works, they are given an incentive to create, and that 'encouragement of individual effort by personal gain is the best way to advance public welfare through the talents of authors and inventors in 'Science and the useful Arts.'"[37]  "The monopoly created by copyright thus rewards the individual author in order to benefit the public."[38] This will not happen if the works of authors can be stolen without an effective means of deterring infringement and penalizing infringers. "Encouraging piracy would do an immense disservice to the public purposes that animate copyright, with little commensurate gain."[39] As such, "one of the goals of the Copyright Act is to discourage infringement."[40]

Plaintiff presented a prima facie case.  Plaintiff offered dismissal in December 2017.  Mr. Brinkley rejected it.  Even without Mr. Brinkley sworn declaration, Plaintiff dismissed.  No deterrent of assertions of prima facie infringement is needed.  Deterrent of infringement is needed.

Mr. Brinkley request for fees should be denied.

---

[35] *See e.g.*  No. 04-CV-73645-DT, 2005 U.S. Dist. LEXIS 20360 (E.D. Mich. May 19, 2005) (denying fees under the Copyright Act in peer to peer infringement case when infringer was subscriber's daughter); *Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 727 (5th Cir. 2008) (denying fees in peer to peer infringement case when infringer was daughter of subscriber).
[36] *Kirtsaeng,* 136. S.Ct. at 1987-88..
[37] *Mazer v. Stein*, 347 U.S. 201, 219, 74 S.Ct. 460, 471, 98 L.Ed. 630 (1954).
[38] *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156, 95 S.Ct. 2040, 2043, 45 L.Ed.2d 84 (1975).
[39] *Sony BMG Music Entm't v. Tenenbaum*, 672 F. Supp. 2d 217, 234 (D. Mass. 2009).
[40] *Fogerty,* 114 S. Ct. 1023, 1029 (1994).

### 2.     Out-of-pocket Expenses Should All be Denied.

Defendant utterly failed to comply with LR-Civ 54 2(a) for out of pocket expenses.  There being no required "bill of costs on a form available from the clerk of court" on file 14-days after the July 6, 2018 ruling, which form is required to establish proper out-of-pocket expenses under the federal rules, Defendant's request for out-of-pocket costs should be categorically denied.

### 3.     The Attorney's Fees Sought by Defendant are Excessive and/or Not proper

The amount of fees sought by Mr. Brinkley are excessive.  Defendant was under no obligation to file an Answer or Counterclaim; these fees are excessive.  Defendant chose to pursue discovery when it was not necessary; these fees are excessive.  Defendant chose to file lengthy briefs opposing Plaintiff's voluntary dismissal of its action against Mr. Brinkley wen that motion was also accompanied by an express covenant not to sue; these fees are excessive.  Defendant chose to context subject matter jurisdiction in the face of controlling precedent; these fees are excessive.

Counsel Hoole has submitted improper, redacted billing sheets, without serving any non-redacted copy on counsel for Plaintiff.  This leaves the court and counsel for Plaintiff to guess as to the appropriateness of Mr. Hoole's billing.  An award of attorney's fees is not to be based on speculation.  All billings of Mr. Hoole referencing a billing description with redacted content should be rejected.

Because Mr. Brinkley had the opportunity, without the obligation of litigation, to resolve this matter without incurring attorney's fees, the attorney's fees incurred by Mr. Brinkley are excessive under the circumstances and should be denied.

D.   **CONCLUSION**

Plaintiff asserted a prima facie case of copyright infringement.  Plaintiff sought early and ever to identify the true infringer.  Plaintiff offered to Defendant an out of this litigation in December 2017.  Plaintiff maintained a policy of avoiding unnecessary fees, costs and expenses throughout the proceedings.

After having been released of all obligation under a summons and the Complaint, Defendant chose to pursue an unnecessary and aggressive defense while withholding exonerating information and withholding a sworn declaration of his involvement for five (5) while counsel generated tens of thousands of dollars in unnecessary attorney fees.  The purposes of the Copyright Act are not furthered by awarding attorney fees to a Defendant after ignoring notice from the Internet Service Provider, ignoring Plaintiff settlement efforts and rejecting Plaintiff's December 2017 offer to resolve this matter without further formal litigation.

Defendant's request for an award of attorney's fees should be denied.

The amount of attorney's fees are grossly excessive in light of the circumstances and should be denied.

DATED: August 14, 2018.

DUREN IP

By:   /s/Todd E. Zenger
            Todd E. Zenger

        Attorneys for Plaintiff
        Criminal Productions, Inc.