REDACTED

ON-LINE COPYRIGHT INFRINGEMENT LOGGING SERVICES AGREEMENT

MaverickEye UG, Copyright Management Services, Ltd., and Millennium Media, Inc.

This On-Line Copyright Infringement Logging Services Agreement (the "Agreement") is by and between MaverickEye UG (haftungsbeschränkt), a legal entity organized and existing under the laws of Germany, ("ME"), and Copyright Management Services, Ltd. ("CMS") and Millennium Media, Inc., 6423 Wilshire Blvd. Los Angeles, CA 90048, USA ("CLIENT").

## RECITALS

A.    CMS is in the business of enforcing copyrights for a number of motion pictures owned or subject to the control of CLIENT, ("Works").

B.    ME is in the business of tracking and recording infringing computer transactions that occur via the BitTorrent protocol for copyright owners.

C.    CLIENT desires to retain ME's services pursuant to the terms of this agreement and ME desires to provide its services to CLIENT pursuant to the terms of this Agreement.

D.    EFFECTIVE DATE:  The effective date of this agreement is January 1, 2017.

## AGREEMENT

1.    OBLIGATIONS OF ME

1.1    ME shall use its reasonable efforts to identify those computer files being distributed via the BitTorrent protocol that contain a copy of one or more of the Works.

1.2    ME shall obtain pieces of the computer files being transmitted without authorization via BitTorrent that contain copies of the Works in a manner that will not further distribute the Works.

1.3    ME shall use a BitTorrent Client to reassemble the collected pieces into a viewable movie file.

1.4    ME shall visually compare the movie files which are suspected copies of the Works obtained from the internet via the BitTorrent Protocol to the original Works at multiple time points on each work and confirm that the full length of the BitTorrent transmitted file is commensurate with the length of the original Work.

1.5    ME shall designate as "Verified Files" those movie files that are copies of original Works based on visual confirmation.

1.6.    ME shall create a computer log file of the infringing transactions.

REDACTED

1.7     ME shall use a forensically sound Packet Analyzer to record as PCAP files the computer transaction between the infringer and its servers.

1.8     ME shall save each PCAP file evidencing an infringing transaction on a WORM tape to ensure that the data cannot be altered and that the data may be later retrieved and purchased as needed.

1.9     At no point in time will ME upload or distribute any of the Works on BitTorrent or any other peer-to-peer file sharing network.

2.0     ME shall provide the CLIENT and associated counsel with the data of the alleged infringements through an agreed-on interface.

2.1     Regardless of the termination of this Agreement by any party, ME shall support and maintain the data as may be needed for any litigation of claims for a period of at least three (3) years beginning from the date the data was first used in preparation for filing of any lawsuit.

2.      DATA DELIVERY

2.1 Data delivery shall be in a manner agreed on by the parties.

3.      LIABILITY

3.1. If ME's performance of its obligations under this agreement is prevented or delayed by any act or omission of CLIENT, its agents, subcontractors, consultants or employees, ME shall not be liable for any costs, charges or losses sustained or incurred by CLIENT that arise directly or indirectly from such prevention or delay.

4.      REMUNERATION

4.1     CMS shall pay ME, on behalf of all of CMS'S clients, at a rate of $▇ per IP address for all past and future titles, but not more than a total of $ ▇▇▇ USD per month generated through the global network using the data for enforcement of P2P online infringements. This may be amended from time to time only by written agreement between CMS, CLIENT, and ME.

4.2     CMS shall pay each invoice submitted by ME, in full and in cleared funds, within 14 days of receipt to a bank account nominated by ME.

4.3     Without prejudice to any other right or remedy that it may have, if CMS fails to pay ME on the due date CMS shall pay interest on the overdue amount at the rate of ▇% per annum.

4.4     Should CMS fail to cure on demand within 90 days, ME may suspend all services until payment has been made in full.

ME – On-Line Copyright Infringement Logging Services Agreement   Page 2

REDACTED

4.5     If any of ME's employees are obligated to appear at a legal proceeding then CMS shall reimburse ME for any out-of-pocket travel costs and their daily rate in accord with Schedule A.

4.6     Additional services and work outside of this agreement may be charged as per the Schedule A of this agreement or under such terms as the parties agree. Additional services shall include:

    4.6.1   Ordering expanded data or trace activity;

    4.6.2   Ordering TAR / .torrent related files for a HASH;

    4.6.3   Ordering PCAP files for any capture;

    4.6.4   Providing any deposition testimony;

    4.6.5   Any in-personal testimony or appearance.

4.7. CLIENT herewith, authorizes ME to collect payment from Copyright Management Services, Ltd., and/or any law firm accessing the data and filing the data. At no point in time will CLIENT be responsible, obligated, or liable for any payment or fee to ME.

## 5. CONFIDENTIALITY

5.1     CLIENT undertakes that it shall not at any time during the agreement, and for a period of five years after termination of this agreement disclose to any person technical or commercial know-how, specifications, inventions, processes or initiatives which are of a confidential nature and have been disclosed to CLIENT, its employees, agents, consultants or subcontractors (or of any member of the group of companies to which CLIENT belongs) and any other confidential information concerning MEs business or its products which CLIENT may obtain.

5.2     CLIENT may disclose MEs confidential information:

    5.2.1   To its employees, officers, representatives or advisers who need to know such information for the purposes of carrying out the party's obligation under this agreement. Each party shall ensure that its employees, offices, representatives or advisers to whom it discloses the other party's confidential information comply with these clauses;

    5.2.2   To any associated counsel;

    5.2.3   To any party with an interest in the Works monitored; and

    5.2.4   As may be required by law, required by a court of competent jurisdiction or any governmental or regulatory authority. Where possible such confidential information shall be filed under seal.

    5.2.5   CLIENT shall not use ME's confidential information for any purpose other than agreed.

REDACTED

5.3.    All materials, equipment and tools, drawings, specifications and data supplied by ME to CLIENT (including pre-existing materials) shall, at all times, be and remain (as between ME and CLIENT) the exclusive property of ME, but shall be held by CLIENT in safe custody at its own risk and maintained and kept appropriately by CLIENT, and shall not be disposed of or used other than in accordance with ME's authorization or in furtherance of the CLIENT's efforts to enforce copyrights.

5.4    ME shall keep confidential the specifics of any data order by CLIENT or data supplied to CLIENT.

## 6. LIMITATION OF LIABILITY

6.1.  Subject to Clause 1, ME shall not be liable to CLIENT or its connected parties, whether in contract, tort (including negligence for breach of statutory duty), or otherwise arising under or in connection with this agreement for:

6.1.1    Loss of profits;

6.1.2    loss of revenue or business;

6.1.3    loss of agreements or contracts;

6.1.4    loss of anticipated savings;

6.1.5    loss of or damage to goodwill;

6.1.6    loss of use or corruption of software, data or information; or

6.1.7    any indirect or consequential loss.

## 7. TERMINATION

7.1    Either party shall be entitled to terminate this Agreement without cause upon one month's written notice to the other.

7.2    On termination or expiry of this agreement, CMS shall immediately pay to ME all of CLIENT's outstanding unpaid invoices and interest and, in respect of service supplied but for which no invoice has been submitted, ME may submit an invoice, which shall be payable immediately on receipt.

7.3    ME's duties as outlined above to support any pending cause or action pending as of termination shall persist through the duration of any such cause or action with compensation paid to ME in accord with Schedule A or as the parties may agree.

## 8.  NO PARTNERSHIP

8.1    CLIENT and ME agree that there is no partnership created by this agreement and expressly disclaim any such partnership.

8.2    Each party acknowledges that the nature of their relationship is that of a

ME – On-Line Copyright Infringement Logging Services Agreement   Page 4

LHF 000259

REDACTED

vendor and vendee. Nothing in this Agreement shall make either party an agent of the other party. Each party acknowledges that neither party has the right nor ability to supervise or control the other.

8.2     Data collected by ME under Section 1 of this agreement shall remain the sole property of ME and ME shall be free to sell such data on the open-market as an independent vendor, even if such sales are to a direct competitor of CLIENT.

## 9.  MISCELLANEOUS

8.1     ME does not make any representation or warranty about the outcome of any particular legal matter. ME's warranty is in the accuracy of its identifying and verification of IP Addresses that are used during the commission of an infringing transaction. ME's also warrants that its collection of data as outlined in Section 1 of this agreement will not result or involve the uploading or distribution of CLIENT'S Works on any BitTorrent or file sharing network.

8.2     This Agreement, together with the documents referred to in it, constitutes the entire agreement and understanding of the parties and supersedes any previous agreement between them relating to the subject matter of this Agreement.

8.3     Each party acknowledges that in entering into this Agreement it does not rely on any representation or warranty except as expressly set out in this Agreement, but nothing in this Agreement is intended to limit or exclude any liability for fraudulent misrepresentation.

8.4     No putative amendments to this Agreement shall be valid unless agreed to in a writing by all of the parties.

8.5     If any part of this Agreement is held illegal or unenforceable by a court of competent jurisdiction, that part shall be deemed not to form part of this Agreement and the enforceability of the remainder of this Agreement shall not be affected.

8.6     If a party fails to exercise, or delays in exercising, a right under this Agreement, it shall not be deemed to have waived that right unless said waiver is set forth in a writing signed by the waiving party.

8.7     Each party shall, both during and alter the term of this Agreement, do everything reasonably necessary to give effect to the provisions of this Agreement.

8.8     California law shall govern this Agreement. Each party submits the jurisdiction of the Courts in Los Angeles, California for the sole purpose of adjudicating any dispute arises out of this Agreement. Each party waives the necessity of hand delivery of service of process, the protections afforded by all service of process laws, including the Hague Convention, and hereby agrees to

ME – On-Line Copyright Infringement Logging Services Agreement   Page 5

REDACTED

accept service by regular mail so long as a copy of the pleadings are also emailed to the recipient.

8.9     Any dispute, controversy, or claim arising out of or relating to the enforcement, interpretation, or alleged breach of this Agreement, including without limitation, tort claims and issues of arbitrability, shall be submitted to and resolved by confidential, final and binding arbitration in the English language, in Los Angeles, California before one neutral arbitrator appointed in accordance with the Rules for International Arbitration of the Independent Film & Television Alliance®, and judgment upon the award rendered by the arbitrator may be entered in and enforceable by any court having jurisdiction.

8.10   This Agreement may be executed in two or more counterparts, each of which together shall be deemed an original, but all of which together shall constitute one and the same instrument. In the event that any signature is delivered by facsimile transmission or by e-mail delivery of a ".pdf' format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf' signature page were an original thereof.


Millennium Media, Inc.


_____

DelMarie C. Broco



On behalf of Copyright Management Services, Ltd.


_____

Patrick Achache




On Behalf of MaverickEye, UG


_____

Thomas Nowak




ME – On-Line Copyright Infringement Logging Services Agreement   Page 6

LHF 000261

REDACTED

Schedule  A

MaverickEye UG Fees

Unless otherwise agreed, the following minimum fees shall be applied to services.


Consulting and Testimony by Senior System Architect       Daily rate: $▮▮
Consulting and Testimony by Senior Developer              Daily rate: $▮▮
Consulting and Testimony by IT Technician                 Daily rate: $▮▮
Hourly technician fees                                    $▮ / Hour

Travel expenses and support as needed:
4 Star Hotel or better, all flights over 4 hours at premium or better.


IP address extracted for use:   $▮ each, as per agreement.
PCAP File delivery:             $▮, for first off a tape; $▮ for each subsequent
                                from the same tape.
Extended Data / Trace:          $▮ for first order per IPA; $▮ for subsequent.
Worm tape production            $▮ per tape.
Source Torrent File:            $▮ for files under 2gb; $▮ for 2gb and greater.

Further services and consulting:       As per billing.


*All sums in USD

ME – On-Line Copyright Infringement Logging Services Agreement   Page 7