Todd E. Zenger (5238)
DUREN IP
610 E. South Temple Street, Suite 300
Salt Lake City, Utah 84102
Phone: (801) 869-8538
Email: tzenger@durenip.com

Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| CRIMINAL PRODUCTIONS, INC., | Civil Action No. 2:17-cv-00550-DN |
| Plaintiff, | Judge David Nuffer |
| vs. | **PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, PERMANENT INJUNCTION AND ATTORNEY'S FEES AS TO CERTAIN DEFENDANTS** |
| Delgado, et al., | |
| Defendants. | |

Plaintiff Criminal Productions, Inc. (the "Plaintiff"), by and through its counsel of record,

Todd E. Zenger, DUREN IP, hereby moves this Court for the entry of a default judgment against

each of the Defendant(s) "Defendants" listed below:

| IP | NAME | ADDRESS | DATE OF ENTRY OF DEFAULT |
|---|---|---|---|
| 67.177.45.20 | Cynthia Delgado | 105 GWEN ST, Ogden, UT 84404 | 7/31/2020 |
| 75.162.176.115 | Mike Hudson | 13521 S Muhlenburg Way, Riverton, UT 84065 | 7/31/2020 |
| 75.162.114.81 | Sara Palacios | 141 W 200 N, Logan, UT 84321 | 7/31/2020 |
| 73.98.177.163 | Troy Regier | 6232 S STERNWOOD | 7/31/2020 |

| | | DR, Taylorsville, UT 84129 | |
|---|---|---|---|
| 65.130.222.50 and 71.35.226.137 | Karen Santarosa | 12494 S 800 E, Draper, UT 84020 | 7/31/2020 |

(the "Defendants in Default" of "Defendants") pursuant to Fed. R. Civ. P. 55(b)(2), requesting an award of statutory damages pursuant to 17 U.S.C. § 504(c)(1) and further injunctive relief and attorney's fees as described herein:

Concise Statement of Fact and Basis for Relief

Entry of Default has been entered as to the Defendants in Default. Despite being provided ample opportunities to respond to the present action, Defendants are in default, having failed to timely respond to the Plaintiff's Complaint. The Plaintiff has made multiple attempts to elicit contact and/or cooperation from the Defendants in Default—sending multiple letters and various communications and personally serving Defendants with summons and the Complaint. Defendants have ignored the summons and other requests to participate in this action. In light of Defendants' disregard for the Court's summons and proceedings, the Plaintiff is left with no choice but to seek a default judgment.

Precise Relief Requested

Plaintiff seeks default judgment against Defendants in Default requesting statutory damages pursuant to 17 U.S.C. § 504(c)(1) in the amount of ten thousand dollars (USD $10,000.00) against each Defendant and a permanent injunction enjoining each Defendant from directly or indirectly infringing Plaintiff's rights as to the Plaintiff's motion picture *Criminal*, including without limitation using the Internet to reproduce, to distribute, to copy, or to publish any excerpts or copies of the motion picture *Criminal*.

**STATEMENT OF FACTS**

The Plaintiff brought the present suit upon discovering that its feature film *Criminal* had been pirated over a BitTorrent peer-to-peer file-sharing network and unlawfully copied many thousands of times amongst users throughout this jurisdiction, throughout the United States and throughout the world.  ECF 99, Amended Complaint.

In an effort to track and identify the individual infringers responsible for the illegal copying and sharing of its motion picture, Plaintiff engaged the investigative services of MaverickEye. ECF 5 (Daniel Arheidt Declaration). MaverickEye employed its investigative software to monitor Internet traffic within BitTorrent networks and thereby identify, analyze, archive and document unauthorized copying and distribution of the Plaintiff's motion picture. *Id.*

The infringers (which includes the Defendants in this case) used BitTorrent client software to receive, copy and distribute unauthorized and infringing copies of the Plaintiff's motion picture. ECF 99, Amended Complaint.  Each infringer shared its copies of the Plaintiff's motion picture with other BitTorrent participants, thus willfully joining in a collective effort (known as "a swarm") to replicate and distribute infringing copies of the Plaintiff's motion picture to other peers within the swarm; this resulted in the unauthorized, dissemination of the Plaintiff's motion. *Id.*

Using geo-location information, MaverickEye then indexed the data by jurisdiction, allowing Plaintiff's counsel access to the full database of infringements occurring within the State of Utah. ECF 5 (Daniel Arheidt Declaration).

Still, in order to ensure the accuracy of the information collected, before filing the present lawsuit, Plaintiff's counsel transmitted the data sets related to the proposed Defendants to a third party consultant to review and confirm. ECF 5 (Daniel Arheidt Declaration).   The Consultant then

reviewed the Defendant data, cross-checked the data against the database compiled by MaverickEye, and confirmed the accuracy of the information. *Id.*  Only after confirming the accuracy of the data with both MaverickEye and an independent consultant, did the Plaintiff move forward with the present case.

Having conducted the foregoing due diligence, the Plaintiff filed the present case on June 7, 2017. ECF 2, Complaint.  Shortly thereafter, the Plaintiff promptly filed its ex parte motion seeking to open discovery for the limited purpose of discovering the true identities of the Defendants. The Court subsequently granted the Plaintiff's motion for discovery, and the Plaintiff then served a subpoena upon the Defendants' Internet Service Provider ("ISP").

The ISP responded to the subpoena with the names and contact information of each subscriber/swarm participant associated with the identified IP Address observed in the swarm. Plaintiff's counsel immediately sent a settlement proposal to Defendants, providing notification of the pending litigation, potential statutory damages and potential default judgment for failure to respond.

Absent settlement, Plaintiff proceeded to formally serve Defendants with a copy of the summons and the Complaint.  Defendants in Default were personally served.

Upon request of Plaintiff, the Clerk has subsequently entered default on the date shown in the table above.

Plaintiff now moves this Court for Default Judgment against Defendants in Default, asking that this Court award the Plaintiff statutory damages pursuant to 17 U.S.C. § 504(c) in the amount of Ten Thousand dollars (USD $10,000.00) and further injunctive relief and attorney's fees as described herein.

### A.  DEFAULT JUDGMENT IS WARRANTED IN THIS CASE

Default judgment is appropriate "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise. . ." *Fed. R. Civ. P. 55(a)*. Federal Rule of Civil Procedure 55(b)(2) provides that "a court may enter a default judgment after the party seeking default applies to the clerk of the court as required by subsection (a) of this rule." *Fed. R. Civ. P. 55(b)(2)*.  Plaintiff has done so.

Federal Rule of Civil Procedure 55 prescribes a two-step process to obtain a default judgment. First, the moving party must seek entry of default. *Fed. R. Civ. P. 55(a)*.  In this case, default has been entered.

Second, after default has been entered, the moving party must seek a default judgment from the court. *Fed. R. Civ. P. 55(b)*; *Williams v. Smithson*, No. 95-7019, 1995 WL 365988, at *1 (10th Cir. June 20, 1995). Upon entry of default, the well-pleaded allegations of a complaint are taken as true. *E.g., GeoSpec1 Systems, LLC v. Infrastructure Corp. of America*, Case No. 13-cv-00407, 2013 WL 4011053, at *3 (D. Colo. Aug. 6, 2013). The court then determines whether the alleged facts constitute a legitimate cause of action entitling the moving party to judgment. *Id.* (citing *10A Wright & Miller* § 2688 at 63).

To state a cause of action for copyright infringement, a plaintiff must plead: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Blehm v. Jacobs*, 702 F.3d 1193, 1199 (10th Cir. 2012). Registration of the allegedly infringed copyright is a prerequisite to bringing a claim for copyright infringement. *17 U.S.C. §411(a)*.  A plaintiff can indirectly prove copying by "establishing that [defendant] had access to the copyrighted work and that there are probative similarities between the copyrighted material and the allegedly copied material." *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1178 (10th Cir. 2009) (citation omitted).  Pursuant to the foregoing analysis, the Court should enter a

5

default judgment against Defendant in favor of the Plaintiff.

Plaintiff's Complaint fully pleads a copyright cause of action. Plaintiff has presented unrebutted evidence of copyright ownership. ECF 99-1, Copyright Registration. Plaintiff has alleged that copyright infringement has occurred over the Internet service controlled by Defendants. This allegation is supported by records of Maverickeye UG (MEU). MEU is in the business of providing forensic investigation services to copyright owners. MEU monitors P2P / BitTorrent networks for acts of distribution of Plaintiff's motion picture *Criminal*. ECF 5 (Daniel Arheidt Declaration).

To provide these investigation services MEU uses proprietary MaverikMonitor™ software. *Id.*, ¶ 10. As a part of that business MEU maintains a database and records of the investigations in indexed evidence logs. *Id.*, ¶ 2. The MaverikMonitor indexed evidence logs confirm that Defendants' IP address, the relevant time, and hash value, accurately reflect instances of MEU's observation of copying and/or distribution of Plaintiff's Motion Picture over Defendant's Internet service. *Id.*, ¶ 14.

Plaintiff's Complaint specifically alleges that copyright infringement has been observed over Defendants' Internet service identified by the Internet Protocol (IP) numbers listed in the table above. Amended Complaint, ECF 99, ¶¶ 13-26, 39-44, and Ex. B thereto. The records of MEU confirm that electronic files containing Plaintiff's copyrighted Motion Picture passed over the IP addresses of Defendants on a given date and at a certain time.

Copyright law prohibits both accidental and willful infringement. There is no need to prove anything about a defendant's mental state; copyright infringement is a strict liability tort. A strict liability tort is a legal wrong that does not require a "mental intent." In other words, a copyright owner, does not need to prove a defendant intentionally infringed the copyright in order to create

liability because it is a "strict liability" tort.  *E.g., Educational Testing Service v. Simon*, 95 F. Supp. 2d 1081, 1087 (C.D. Cal. 1999) (holding copyright infringement occurred because the plaintiff owned the copyright and the protected material was copied).  Accepting Plaintiff's well-plead allegations as true, Defendants are liable for copyright infringement.

The Defendants' conduct in this case was deliberate and willful. ECF 99, paras. 41-51. Defendants' willful misconduct is established through the pleadings and the Defendants' failure to respond to summons and repeated requests to participate in this action. *Id; e.g., Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). "[A] willful infringer is exposed to a damage award higher not limited to [sic] the value of the copyright holder's losses and/or the infringer's benefits. Statutory damages for willful infringement have a punitive component of which the court must be mindful." *Jackson v. Sturkie*, 255 F.Supp.2d 1096, 27 1103 (N.D. Cal. 2003).

## B.  STATUTORY DAMAGES

For the reasons set forth below, and in keeping with Congressional intent and the facts of this case, Plaintiff seeks a statutory award of Ten Thousand dollars (USD$10,000) against each of the Defendants—i.e., less than 7% of the maximum $150,000 allowed by law.

A copyright owner "may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action." *17 U.S.C. § 504(c)*. Where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court has discretion to increase the award of statutory damages to a sum up to $150,000. Id. at § 504(c)(2). The Court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the limits in the statute.  *E.g., Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (quoting *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984)). "Even for

7

uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within [the] statutory limits to sanction and vindicate the statutory policy" of discouraging infringement. *F. W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952); see also *Peer Int'l*, 909 F.2d at 1337.

The statutory award requested herein is justified in light of the Defendants' willful misconduct and necessary to deter future infringements.  There is ample persuasive authority from other jurisdictions to support a statutory award in the amount requested herein. Exhibit 1 hereto; *e.g., Malibu Media*, supra, 2013 WL 6178926 at *1 (awarding $51,750 in statutory damages where by virtue of entry of default, it had been established that defendant willfully infringed plaintiff's copyright); see also *Flava Works, Inc. v. Fisher*, 12-CV-1888, Docket Number 20 (N.D. Ill., October 30, 2012) (Lee, J.) (awarding $1,500,000 in statutory damages in addition to attorneys' fees and costs on default); *Cobbler Nevada v. Jokic*, 8:15-cv-2653 -T-27TBM, Docket Number 20 (M.D. Fl. June 22, 2016) (awarding $15,000 in statutory damages, and $2,437 in costs and fees); *Cobbler Nevada v. Woodward*, 8:15-cv -2652-T-33AEP, Docket Number 25 (M.D. Fl. June 7, 2016) (H. Covington) (awarding $15,000 in statutory damages, and $3,382 in costs and fees); *The Bicycle Peddler, LLC v. Kovatchev*, 13-CV-7012, Docket No. 35 *N.D. Ill., December 9, 2014) (Darrah, J.) (awarding $10,000 in statutory damages, $9,116.00 in attorneys' fees and $755.78 in costs).

Nominal damages in this case would be insufficient because Defendants have caused significant harm to Plaintiff by Defendants facilitating infringement by other members of the swarm. In addition, an award of $10,000 is not only justified by the willful nature of Defendants' infringement, but also furthers the purposes of the Copyright Act by (1) protecting the public's interest in the creation and development of the arts and (2) deterring others from infringing on

Plaintiff's copyright. For these reasons, Plaintiff's request for statutory damages is both restrained and appropriate.

Meanwhile, and perhaps most notably, the damages award in this case must be sufficiently high to deter future infringement. For instance, a modest award of the statutory minimum is unlikely to deter others from engaging in the same behavior as the Defendants did in this case. The Defendants represents a vast total of persons who infringed upon the Plaintiff's motion picture. Given that there are many thousands of infringers, it is logistically impossible for the Plaintiff to pursue every last one. As such, the only way to deter future infringement is to set an immediate example of those that Plaintiff is able to identify and hold liable – to show Utahns that the courts will not allow this jurisdiction to be a haven for unchecked copyright piracy. The Defendants participated in a potentially global piracy ring that materially erodes the fundamental structures of intellectual property. While the actions of each individual participant may seem innocuous, their collective action amounts to an extensive infringement operation. Despite the otherwise widespread availability of lawful digital media outlets (like Netflix, Hulu and Crackle), BitTorrent usage and infringement continues to grow unabated. Meanwhile, each year, our nation's film and television industries lose billions of dollars in revenue to Internet piracy. To deter such, the requested statutory damage is reasonable.

This is confirmed by legislative history. As far back as 1999, Congress recognized the threat posed by digital peer-to-peer file-sharing, and, in response to this phenomenon, substantially increased the statutory damages of 17 U.S.C. § 504(c) from $100,000 to $150,000 for the specific purpose of deterring such infringing activity. *See Digital Theft Deterrence and Copyright Damages Improvement Act of 1999*, P. L. No. 106-160, § 2, 113 Stat. 1774 (1999). After careful study, hearings and evaluation of evidence, Congress increased the damages available to plaintiffs

in actions such as this to both incentivize plaintiffs to bring actions and to act as a deterrence to those such as the defendant. *Id; Sony BMG Music Entertainment v. Tenenbaum*, 660 F. 3d 487, 500 (1st Cir. 2011), *cert denied*, 132 S Ct 2431 (2012). (Congress raised the available statutory damages with the specific intent of deterring unlawful peer-to-peer file sharing.).

A clear deterrent technical to BitTorrent piracy has not yet been identified.  Infringement via BitTorrent continues to grow. Without a deterrent effect, BitTorrent users throughout Utah and throughout our country, and elsewhere, continue to illegally acquire and share movies, television shows and other copyrighted content (like the Plaintiff's motion picture) without payment and without authorization.  The practice has become so commonplace that it is disregarded and shrugged off as an insignificant part of our everyday life.

Such a culture of piracy should not be encouraged.  It erodes centuries of intellectual property law and unravels an economic pillar of our economy. The right to intellectual property was something so fundamental to our nation's founding, that it is included in the first article of the Constitution. *U.S. Const. art. I, § 8, cl. 8.*  For the foregoing reasons, the Plaintiff respectfully requests that this Court enter an award of statutory damages, pursuant to 17 U.S.C. § 504(c), against each Defendant in the amount of Ten Thousand dollars (USD $10,000.00).

## C.  PERMANENT INJUNCTIVE RELIEF

The Copyright Act vests district courts with power to grant permanent injunctions as they "deem reasonable." *17 U.S.C. § 502(a)* ("Any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.").  A permanent injunction is warranted when there is no reason to believe the infringing party will cease the infringement without an injunction. See, *e.g., Broadcast Music, Inc. v. Blueberry Hill Family Restaurants, Inc.*,

899 F. Supp. 474, 483 (D. Nev. 1995) (Copyright Act) (citing Tempo *Music v. Christenson Food & Mercantile Co.*, 806 F. Supp. 816, 821 (D. Minn. 1992)) (same); *Superhype Publishing, Inc. v. Vasiliou*, 838 F. Supp. 1220, 1226 (S.D. Ohio 1993) ) (same); *Storz Performance, Inc. v. Moto 25 Italia*, No. 07-cv-2242 W(WMC), 2008 WL 4284402, at *4 (S.D. Cal. Sept. 15, 2008) (Lanham Act); *Sprint Nextel Corp. v. Thuc Ngo*, No. C-12-02764 CW (EDL), 2012 WL 4127296, at *8 (N.D. Cal. Sept. 18, 2012) (same). Generally, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations. See *MAI Systems Corp v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993); Storz, 2008 WL 4284402, at *8.

Courts must consider the following factors in determining whether to issue a permanent injunction: (1) likelihood of irreparable injury if preliminary relief is not granted; (2) a likelihood of success on the merits; (3) balance of hardships; and (4) advancement of the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20 (2008). "An injunction is a matter of equitable discretion" and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id. at 22, 32.

As explained above in detail, Plaintiff has demonstrated a strong likelihood of success on the merits by virtue of the Defendants' default. Furthermore, Plaintiff will suffer irreparable injury absent an injunction.

Plaintiff has established that Defendants' use of BitTorrent has exposed the Plaintiff's motion picture to unauthorized dissemination by many, many additional peers. Since each peer who downloads the motion picture serves as a source of the picture for future peers, the Defendants' continued use of BitTorrent will result in continued multiplied dissemination of the Plaintiff's motion picture to countless other peers. Thus, absent injunctive relief to force the deletion of each infringing torrent file from the Defendants' computers (and from the computers

of those persons utilizing the BitTorrent protocol in active concert or participation with the Defendants to copy and distribute Plaintiff's motion picture), infringement will continue unabated in potentially exponential fashion. Monetary damages cannot properly compensate because the number of participants in the BitTorrent swarm is dynamic as other peer-to-peer participants move in and out of the swarm. See *e.g. Microsoft Corp. v. Big Boy Distribution LLC*, 589 F. Supp. 2d 1308, 1321 (S.D. Fla. 2008) ("Generally, a showing of copyright infringement liability and threat of future violations is sufficient to warrant entry of a permanent injunction."). This establishes that the harm to Plaintiff without the injunction is far greater than the harm to Defendants when required to cease infringement.

Also, as established above, entering a permanent injunction does not violate any material public policy. The contrary is true, entering a permanent injunction further public policy by curbing copyright infringement.

Injunctive relief is warranted and should be granted.

### D.  ATTORNEY'S FEES AND COSTS

Under the Copyright Act, "the court in its discretion may allow the recovery of full costs . . . .[T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs." *17 U.S.C. § 505*. As the prevailing party against a willful infringer, Plaintiff requests an award of attorney's fees.

The starting point for determining reasonable fees is the calculation of the "lodestar," which is obtained by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate. See *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978

(9th Cir. 2008) (internal quotations and citation omitted).

In calculating the lodestar, the court must determine a reasonable rate and a reasonable number of hours for each attorney. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *rehg denied, amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987). The lodestar is deemed to be presumptively reasonable, though the district court has the discretion to consider and upward or downward adjustment.  Plaintiff's request an award of attorney's fees to be determined in a post judgment filing.

## CONCLUSION

For the foregoing reason, the Plaintiff respectfully requests that this Court enter a judgment against each Defendant in Default as follows:

1.      An award of statutory damages pursuant to 17 U.S.C. § 504(c) against each of the foregoing Defendants in the amount of Ten Thousand dollars (USD $10,000.00);

2.      A permanent injunction against each Defendant in Default, enjoining Defendants from directly or indirectly infringing Plaintiff's rights as to the Plaintiff's motion picture, including without limitation using the Internet to reproduce, to distribute, to copy, or to publish the motion picture.

3.  An award of attorney's fees.

4. An award of costs as the prevailing party.


DATED: August 6, 2020

                              DUREN IP


                              By: ___/s/Todd E. Zenger_____
                                      Todd E. Zenger
                                      Attorneys for Plaintiff
                                      Criminal Productions, Inc.

13

CERTIFICATE OF SERVICE

A true and correct copy of this motion and its associated exhibits were served by first class mail as follows on August 6, 2020:

| NAME | ADDRESS |
|---|---|
| Cynthia Delgado | 105 GWEN ST, Ogden, UT 84404 |
| Mike Hudson | 13521 S Muhlenburg Way, Riverton, UT 84065 |
| Sara Palacios | 141 W 200 N, Logan, UT 84321 |
| Troy Regier | 6232 S STERNWOOD DR, Taylorsville, UT 84129 |
| Karen Santarosa | 12494 S 800 E, Draper, UT 84020 |

_____ /s/ Daniel J. Thomas_____